IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DARRYL GUMM,                          :

      Petitioner,               :
                            Case No. 1:98-cv-838

      vs.                        :
                            JUDGE WALTER HERBERT RICE

BETTY MITCHELL, Warden,               :

      Respondent.               :

---

DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATIONS (DOC. #196) AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. #203) OF UNITED STATES MAGISTRATE JUDGE; SUSTAINING IN PART AND OVERRULING IN PART THE PARTIES' OBJECTIONS TO THOSE DOCUMENTS (DOCS. ##198, 201, 204, 205); GRANTING THIRD AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOC. # 157) ON THE SECOND, THIRD, AND FOURTH CLAIMS FOR RELIEF AND DENYING IT ON THE FIRST, FIFTH, SIXTH, SEVENTH, EIGHTH, AND NINTH CLAIMS FOR RELIEF; LEAVE TO APPEAL IN FORMA PAUPERIS GRANTED; CERTIFICATE OF APPEALABILITY DENIED; TERMINATION ENTRY

---

On September 13, 2007, Petitioner Darryl Gumm filed his Third Amended

Petition for Writ of Habeas Corpus, asserting nine grounds for relief.  (Doc. #157)

Following a second evidentiary hearing, Magistrate Judge Merz issued a Report and

Recommendations on September 28, 2009 (Doc. #196), recommending that the

Court deny Petitioner's First, Second, Fifth, Sixth, Seventh, Eighth, and Ninth

Claims for Relief.  With respect to the Third and Fourth Claims for Relief,

Magistrate Judge Merz recommended that the Court grant a conditional writ of

habeas corpus, the condition being that the State conduct a new trial of Petitioner

within 180 days from the date of final judgment in these proceedings.

After Petitioner and Respondent filed Objections to the Report and Recommendations (Docs. ##198 and 201), Magistrate Judge Merz issued a Supplemental Report and Recommendations (Doc. #203). The parties then filed additional Objections. (Docs. ## 204 and 205). For the reasons set forth below, the Court sustains in part and overrules in part the parties' objections, adopts in part and rejects in part the Report and Recommendations and Supplemental Report and Recommendations, and grants a conditional writ of habeas corpus with respect to the Second, Third, and Fourth Claims for Relief.

I.    **Background and Relevant Law**

The facts and lengthy procedural history of this case are thoroughly and accurately set forth in the September 28, 2009, Report and Recommendations (Doc. #196) and will not be repeated here. To summarize, in 1992, Petitioner, who is mildly mentally retarded, waived his *Miranda* rights and confessed to the aggravated murder, kidnapping, and attempted rape of 10-year-old Aaron Raines. Petitioner was convicted on all counts and sentenced to death on the murder count, 8-15 years for the attempted rape, and 10-25 years for the kidnapping, with all sentences to run consecutively.

He filed his first Petition for Writ of Habeas Corpus in 1998, an Amended Petition in 2000, and a Second Amended Petition in 2001. In 2002, the United States Supreme Court issued its decision in *Atkins v. Virginia*, 536 U.S. 304

2

(2002), holding that it was unconstitutional to execute mentally retarded individuals. Petitioner's habeas proceedings were stayed so that he could pursue state remedies under *Atkins*.

In 2007, pursuant to *Atkins*, Petitioner was resentenced on the aggravated murder charge to life imprisonment with parole eligibility after 30 years.  He then filed his Third Amended Petition for Writ of Habeas Corpus, asserting the following nine grounds for relief:

1.    Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated by the interrogation of Petitioner, wherein inculpatory statements were obtained.

2.    The State of Ohio failed to provide exculpatory and impeachment evidence to the defense as required by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3.    The admission of evidence of prior bad acts of the Petitioner in his capital murder trial, which acts bear no relation to the offenses for which he was tried, violated his right to a fundamentally fair trial secured to him by the Due Process Clause and Eighth Amendment of the United States Constitution.

4.    The cumulative effect of the prosecution's improper pattern of misconduct in Petitioner's capital trial deprived him of his due process rights to a fundamentally fair trial.

5.    Petitioner Gumm was denied the effective assistance of counsel at his capital trial; his conviction violates the Sixth and Fourteenth Amendments.

6.    Petitioner Gumm was deprived of the effective assistance of counsel on his direct appeal as of right in violation of the Sixth Amendment and Due Process Clause of the Fourteenth Amendment.

3

7. The jury's verdict is void as it violates Article Four, Section 2, Clause 2 of the United States Constitution.

8. The trial court denied Petitioner Gumm his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution by permitting the state to introduce gruesome photographs in the trial phase and instructing the jury that they may consider same in the penalty phase.

9. A capital defendant has the right to receive proper jury instructions in the trial phase of his case; the failure to do so violates the First, Sixth and Fourteenth Amendments to the United States Constitution.

As the Magistrate Judge noted, Petitioner's claims are governed by the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, a federal court

> may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" . . . or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

*Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. § 2254(d)).

A state prisoner is required to exhaust all available state court remedies prior to seeking federal habeas relief. 28 U.S.C. § 2254(b). If the state courts do not adjudicate a constitutional claim on its merits because the prisoner failed to raise it in accordance with state procedural rules, the claim is procedurally defaulted and the federal court cannot review the claim unless the petitioner shows cause for the

default and prejudice resulting from the constitutional violation. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977).

## II.     Analysis

### A.     First Claim for Relief: Involuntary Confession

Petitioner maintains that his confession, given to Cincinnati police officers on July 27, 1992, was involuntary. Although he signed written waivers of his *Miranda* rights earlier that day,[1] he maintains that his confession was coerced by the officers, who befriended him, and then called him a "liar" and told him that "he'd better tell the truth." Petitioner argues that because he is mentally retarded, he was more susceptible to police coercion, and that the waiver of his *Miranda* rights was not knowing, intelligent, or voluntary.

At the state court hearing on Petitioner's motion to suppress his confession, the officers admitted that they were aware that Petitioner suffered from mental deficiencies. They testified that they therefore took special care to make certain that he understood his rights before he signed the waiver form. They further testified that they were satisfied that he did, in fact, understand his *Miranda* rights.

Psychologist Nancy Schmidtgoessling also testified at the suppression hearing. She classified Petitioner as mild to borderline mentally retarded, but found that he could read fairly well and knew the meanings of most of the words on the waiver-of-rights form. After examining him, she was unable to render an opinion

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

as to whether he had the ability to knowingly and intelligently waive his *Miranda* rights. Based on all of the evidence presented at the hearing, the trial court concluded that Petitioner had knowingly, intelligently and voluntarily waived his rights. It therefore denied the motion to suppress his confession.

After Petitioner returned to the state courts to pursue his *Atkins* claim, he again raised the issue of the effect of his mental retardation on the voluntariness of his confession. Although the state courts found that, because of his mental retardation, he was not subject to the death penalty, they found that his *Miranda* claim was barred by the doctrine of *res judicata* or collateral estoppel. They concluded that the record did not show that he was unavoidably prevented from discovering the facts upon which his *Miranda* claim rested, or that the claim was based on a newly-created right.

After he was re-sentenced, Petitioner requested another evidentiary hearing in connection with his Third Amended Petition for Writ of Habeas Corpus, seeking to present additional evidence in support of his *Miranda* claim.[2] An evidentiary hearing was held on July 3, 2008 and additional expert witness testimony was presented concerning the effect that Petitioner's mental retardation had on his ability to knowingly, intelligently and voluntarily waive his rights.

The Magistrate Judge ultimately concluded, however, that it would not be proper for the Court to consider the additional evidence presented. Applying the

---

[2] The first evidentiary hearing was held in November of 2000.

standards for granting a new trial under Federal Rule of Civil Procedure 59, the judicial officer found that Petitioner's mental retardation was not a new condition and Petitioner had not demonstrated that the new evidence had been unavailable at the time of the first evidentiary hearing.  He also found that the *Atkins* decision "had no effect on Gumm's claim that his statements to police were involuntary because of his mental retardation."  (R&R, Doc. #196, at 25.)

The Magistrate Judge concluded that the state supreme court's finding that Petitioner's confession was knowing, intelligent and voluntary was not contrary to the "totality of the circumstances" test set forth in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), and was not based on an unreasonable determination of the facts in light of the evidence presented.

Petitioner objects to the Magistrate Judge's decision to ignore the additional evidence presented at the second evidentiary hearing.  Petitioner first questions whether Rule 59 applies at all, but argues that, in any event, that this was "newly discovered evidence" that became available only after the state permitted him to conduct expert discovery in connection with his *Atkins* claim.  Petitioner also argues that even if the Court disregards evidence from the second evidentiary hearing, the Court should still consider the evidence presented at the *Atkins* hearing because that evidence is part of the state court record.  Finally, Petitioner argues that even if the Court excludes all evidence from the second evidentiary hearing and the *Atkins* hearing, there is still enough evidence for the Court to find

7

that the state court's decision on the motion to suppress his confession was contrary to federal law and was an unreasonable determination of the facts in light of the evidence presented at the hearing on the motion to suppress.

In his Supplemental Report and Recommendations, the Magistrate Judge notes that *Atkins* held only that execution of mentally retarded individuals violates the Eighth Amendment.  This issue is analytically distinct from the question of whether Petitioner's mental retardation rendered his confession involuntary.  Petitioner has not been able to offer any valid reason for not presenting the additional evidence in a timely manner.  The Magistrate Judge conceded that Rule 59 is not directly applicable, since there has been no final judgment; however, by analogy, he stated that, in the interest of achieving finality of decisions, the Court should refuse to consider the new evidence unless Petitioner can explain why it was not presented earlier.

In his Supplemental Objections to the Supplemental Report and Recommendations, Petitioner again argues that because the state court did not allow him to conduct discovery, the new evidence was not available until he prepared for his *Atkins* hearing.  He argues that the Magistrate Judge should have exercised his discretion and considered the new evidence.

The Court has conducted a thorough, *de novo* review of the record.  For the reasons articulated by the Magistrate Judge, the Court finds that it would be improper to consider evidence presented at the *Atkins* hearing and at the second

8

evidentiary hearing on Petitioner's federal habeas petition. The Supreme Court's decision in *Atkins* may well have prompted defense counsel to revisit the issue of the effect of Petitioner's mental retardation on the voluntariness of his confession. However, the Petitioner has failed to show why his argument could not have been better developed, and why this "new" evidence could not have been presented, at the first evidentiary hearing.

The Court finds that the state courts' rejection of Petitioner's *Miranda* claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in state court. Petitioner's objections are therefore overruled. The Court adopts the Magistrate Judge's Report and Recommendations and denies the third amended habeas petition with respect to the First Claim for Relief.

### B. Second Claim for Relief: *Brady* Violation

In his Second Claim for Relief, Petitioner argues that prosecutors failed to turn over exculpatory and impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a *Brady* violation, Petitioner must show that: (1) the evidence was favorable to him; (2) it was withheld by the State; and (3) he was prejudiced as a result. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The third prong concerns the materiality of the withheld evidence. As the Supreme Court explained in *Kyles v. Whitley*, 514 U.S. 419 (1995),

9

> [the] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Bagley*, 473 U.S., at 678, 105 S.Ct., at 3381.

*Kyles,* 514 U.S. at 434.

In this case, Petitioner objects to the prosecutor's failure to turn over investigative notes and lead sheets concerning: inculpatory statements made by three other suspects; information concerning local sex offenders who were questioned about Aaron's death; information concerning other individuals seen in the area at the time of the crime; information about others who were with the victim on the night in question; information that would have called into question the testimony of Dallas Hayes, Aaron's step-brother, that Aaron never played in the vacant building where his body was found; evidence that was inconsistent with the prosecution's theory about what time Aaron was killed; and information that gym shoes belonging to another individual matched the gym shoe marks found on Aaron's body.  Petitioner argues that this suppressed evidence could reasonably have put the whole case in such a different light as to undermine confidence in the verdict. He also argues that if the evidence had been disclosed, there is a reasonable probability that the outcome of the proceedings would have been different.

10

The state court found that this undisclosed evidence, viewed collectively, was not material and did not undermine confidence in the verdict. The court concluded that the prosecutor's failure to disclose this evidence did not deprive Petitioner of his right to a fair trial.

In the Report and Recommendations, the Magistrate Judge found that "[m]uch of the alleged *Brady* material is nothing more than rumor, hearsay, hearsay upon hearsay, hearsay upon hearsay upon hearsay, or worse. Gumm has not explained how any of that 'evidence' would have been rendered admissible in court, or how it would have led to admissible evidence." (R&R at 50.) The Magistrate Judge therefore agreed with the state courts that the undisclosed evidence, viewed collectively, was not material, and did not create a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed.

Petitioner objects to the Magistrate Judge's finding concerning the materiality of the undisclosed evidence. He notes that the prosecution has a duty to turn over all favorable exculpatory evidence. Petitioner argues that even if the evidence itself was not admissible at trial, it could prompt defense counsel to pursue other investigative leads and could ultimately lead to other admissible evidence. *See United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991) ("information withheld by the prosecution is not material unless the information consists of, or would lead directly to, evidence admissible at trial for either

11

substantive or impeachment purposes.").

The Court sustains Petitioner's objection on this claim. The Court agrees with the Magistrate Judge that much of the undisclosed evidence was itself inadmissible, but that does not necessarily mean that it would not lead to admissible evidence or that it was not subject to disclosure.

The ABA's Standing Committee on Ethics and Professional Responsibility recently issued an opinion dealing with the scope of the prosecutor's duty to disclose evidence:

> [T]his ethical duty of disclosure is not limited to admissible "evidence," such as physical and documentary evidence, and transcripts of favorable testimony; it also requires disclosure of favorable "information." Though possibly inadmissible itself, favorable information may lead a defendant's lawyer to admissible testimony or other evidence or assist him in other ways, such as in plea negotiations. In determining whether evidence and information will tend to negate the guilt of the accused, the prosecutor must consider not only defenses to the charges that the defendant or defense counsel has expressed an intention to raise but also any other legally cognizable defenses. Nothing in the rule suggests a de minimis exception to the prosecutor's disclosure duty where, for example, the prosecutor believes that the information has only a minimal tendency to negate the defendant's guilt, or that the favorable evidence is highly unreliable.
>
> In the hypothetical, supra, where two eyewitnesses said that the defendant was not the assailant and an informant identified someone other than the defendant as the assailant, that information would tend to negate the defendant's guilt regardless of the strength of the remaining evidence and even if the prosecutor is not personally persuaded that the testimony is reliable or credible. Although the prosecutor may believe that the eye witnesses simply failed to get a good enough look at the assailant to make an accurate identification, the defense might present the witnesses' testimony and argue why the jury should consider it exculpatory. Similarly, the fact that the

12

informant has prior convictions or is generally regarded as untrustworthy by the police would not excuse the prosecutor from his duty to disclose the informant's favorable information. The defense might argue to the jury that the testimony establishes reasonable doubt. The rule requires prosecutors to give the defense the opportunity to decide whether the evidence can be put to effective use.

ABA Formal Ethics Opinion 09-454, at 5 (footnote omitted) (July 8, 2009).

In Petitioner's case, the State had tips and investigative files on several other suspects, but failed to turn them over to defense counsel. The Court is particularly troubled by the prosecutor's failure to turn over tips, interview notes and other evidence concerning suspect Roger Cordray. The police had received Crime-Stoppers tips that Cordray slept in the vacant building where Aaron's body was found, and often drank in the building next door. Christine Robertson told the police that Cordray's coat was supposedly found in the building where Aaron's body was found and Cordray had threatened her not to say anything about it. There were rumors in the neighborhood that Cordray had killed Aaron. However, more significantly, the police had statements from Anthony and Theresa Steele, who said that Cordray had confessed to them that he had killed Aaron. Interview notes from Petitioner's sister indicate that two other individuals – Donna Jones and Paul Worthington – also heard Cordray say that he had killed Aaron. In addition, police interviewed Roberta Shinkle, who told them that William O'Malley beat Cordray, because Cordray said that he and a friend had killed Aaron.

The police located Cordray, questioned him, fingerprinted him, and took pictures of his shoes. Cordray denied any involvement in the murder and the police officers found him to be credible. The tread on his shoes did not match imprints from the crime scene. His palm print bore some similarities to prints found at the scene, but no positive match could be made.

Even if the police considered the evidence of Cordray's alleged confessions to be unreliable, it was still favorable to Petitioner and should have been disclosed. If this information had been turned over by the prosecutor, defense counsel could have conducted their own investigation and may have called Anthony and Theresa Steele, Donna Jones, and Paul Worthington to testify at trial. Cordray's statements to them would appear to fall under the hearsay exception set forth in Ohio Evid. R. 804(B)(3) for statements against interest. Presumably, if Cordray were called to testify, he would assert his Fifth Amendment privilege against self-incrimination. He would therefore be "unavailable" as that term is defined in Ohio Evid. R. 804(A)(1). *See State v. Landrum*, 53 Ohio St.3d 107, 113, 559 N.E.2d 710, 719 (Ohio 1990). For declarants who are unavailable, Rule 804(B)(3) provides the following exception to the hearsay rule:

> A statement that . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement.

14

Ohio Evid. R. 804(B)(3).

Cordray's alleged confession obviously subjected him to criminal liability. In the Court's view, there were sufficient "corroborating circumstances" to support the trustworthiness of his confession. Perhaps most significantly, he apparently confessed to at least four separate individuals and was allegedly beaten up because of his involvement in Aaron's murder. In addition, he was known to hang around the vacant building where Aaron's body was found, and he allegedly threatened Christine Robertson not to tell anyone that his coat was also found in that building. Cordray's palm print revealed some similarities to prints found at the scene of the crime, and Anthony Steele also testified that he noticed that Cordray's hand and knuckles were scraped up.

Such evidence, if presented at Petitioner's trial, could have established reasonable doubt in the minds of the jurors. This is particularly true because, as the Magistrate Judge notes in his Report and Recommendations, the evidence against Petitioner was not very strong. There was no physical evidence linking Petitioner to the crime. The police officers had only Petitioner's confession which, because of his mental retardation and his heightened susceptibility to police coercion, must be viewed with some skepticism. Under these circumstances, it would not take as much evidence to create reasonable doubt in the minds of the jurors.

For this reason, in the Court's view, the investigatory file on Roger Cordray must be considered material evidence that was withheld by the prosecutor in violation of *Brady.*  There is a reasonable probability that the outcome of the trial would have been different if this evidence, standing alone, had been disclosed. The other evidence at issue may not have been as likely to lead to admissible evidence.  It nevertheless factors into the Court's finding that, viewed collectively, the evidence that was withheld undermines confidence in the jury's verdict.  The state court's decision to the contrary involved an unreasonable application of clearly established federal law.  The Court therefore sustains Petitioner's objection to the Magistrate Judge's Report and Recommendations and grants the third amended petition for a writ of habeas corpus on the Second Claim for Relief.

### C.     Third Claim for Relief: Prior Bad Acts Evidence

In his Third Claim for Relief, Petitioner argues that the prosecution's introduction of evidence of prior bad acts, which bore no relation to the offenses for which he was tried, violated his right to a fundamentally fair trial.  He objects to the introduction of two categories of evidence of prior bad acts: (1) testimony elicited from State's witnesses Phyllis Thacker and Charlotte Baker; and (2) hearsay statements contained in records from a psychiatric clinic.  The Magistrate Judge recommended that Petitioner be granted a writ of habeas corpus on this Third Claim for Relief.

16

### 1.    Testimony of Thacker and Baker

Very early in the trial, the prosecution elicited testimony from Ms. Thacker that she was afraid of Gumm because he once told her that he had "fucked [her] horse." (Tr. at 478-80.)  The prosecutor briefly revisited this topic in his rebuttal argument.   Petitioner maintains that the prosecutor had no good faith basis for eliciting this testimony.  According to Petitioner, the sole purpose of eliciting this testimony was to inflame the jury and paint Petitioner as a sexual pervert.  Ohio Evid. R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent. . . "[3]

The Ohio Supreme Court held that even if this evidence should have been excluded, the prosecutor did not dwell on it and, on the whole, Petitioner received a fair trial.  The court concluded that even if the evidence had been excluded, the verdict would have been the same.

---

[3] Petitioner also argues that the prosecutor was improperly allowed to impeach his own witness, Charlotte Baker.  Although Baker ultimately denied that Gumm told her that he was so hard up that he would have sex with *anyone*, Petitioner maintains that it was the question, rather than the answer, that would stick in the jurors' minds.  Again, Petitioner maintains that the only purpose of impeaching Baker was to antagonize the jury and to show that he had a propensity to commit bad acts.  The Court notes that the Magistrate Judge, in the Report and Recommendations, failed to address Petitioner's argument concerning the allegedly improper impeachment of Charlotte Baker.  Petitioner did not raise it in his objections.  The Court therefore considers this argument to be abandoned.

17

In the Report and Recommendations, the Magistrate Judge noted that, as a general rule, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). The Magistrate Judge found that, in this case, the state court evidentiary rulings with respect to Petitioner's prior bad acts did rise to the level of a due process violation.

He found that the testimony that Petitioner had "fucked a horse" was "egregiously unreliable" and "among the most outrageously inflammatory evidence this Court has ever read in a capital case transcript." (R&R at 63-64.) He also found it to be completely irrelevant; even if the statement were true, it did not tend to prove any element of the offenses with which Gumm was charged. Moreover, because this testimony was elicited so early in the trial, the trial was tainted from the beginning.

The Magistrate Judge also noted that the evidence against Petitioner was not particularly strong. There was no physical evidence connecting Gumm to the murder. The prosecution had only his confession, which the Magistrate Judge found to be somewhat suspect in light of Gumm's mental retardation and heightened susceptibility to police coercion. For these reasons, with respect to testimony that Petitioner had "fucked a horse," the Magistrate Judge concluded that the Ohio Supreme Court's finding that Petitioner had received a fair trial was

18

based on an unreasonable determination of the facts in light of the evidence presented.

Respondent objects to the Magistrate Judge's finding that the admission of the "prior bad acts" evidence deprived Petitioner of a fair trial. She maintains that this evidence was admissible to show Petitioner's "motive and intent in the attempted rape and murder of Aaron Raines." Citing Evid. R. 413, 414, and 415, Respondent further argues that evidence of prior sexual assaults and child molestation is routinely admitted at trial and that such evidence is "more inflammatory than testimony that Gumm claimed to have had sex with an unthinking, unfeeling animal." (Resp.'s Obj. to R&R at 3.)

In his Supplemental Report and Recommendations, the Magistrate Judge notes that Ohio has no rules of evidence bearing the numbers 413, 414, or 415, but Federal Rule of Evidence 413 permits admission of "similar crimes" in sexual assault cases, and Rule 414 permits admission of prior crimes of child molestation in child molestation cases. The Magistrate Judge rejected the idea that Petitioner's statement that he "fucked a horse" would be considered a "similar crime" to the offenses for which he was tried, and it does not prove "motive" or "intent" in the attempted rape or murder of Aaron Raines. The Magistrate Judge again concluded that the admission of Thacker's testimony -- that Petitioner told her that he had "fucked a horse" – deprived Petitioner of a fair trial.

19

Respondent also argues that, particularly in a capital case, the court must presume that the jurors followed instructions and would not have wrongfully convicted Petitioner on the basis of something like this.  However, as the Magistrate Judge noted, no limiting instruction was given, leaving the jurors free to believe that because Petitioner had engaged in sexually deviate behavior in the past, it was more likely than not that he lured Aaron Raines into a vacant building for illicit purposes.

After a thorough review of the record and the arguments of both parties, the Court adopts the Magistrate Judge's well-reasoned Report and Recommendations with respect to this claim and finds that the admission of Thacker's statement regarding the horse deprived Petitioner of a fair trial.

### 2. Hearsay Statements Contained in Psychiatric Clinic Records

The second category of "prior bad acts" evidence that Petitioner argues was improperly admitted were records from the Central Psychiatric Clinic.  Dr. Henry Leland, Petitioner's expert witness, reviewed these records in preparation for his trial testimony.  At trial, citing Ohio Evid. R. 703, the prosecutor argued that Dr. Leland's testimony must be stricken unless defense counsel agreed to also admit the clinic records into evidence.  Rule 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

When asked if he had any objection to the admissibility of the clinic records, defense counsel stated, "[no,] [e]xcept for whatever hearsay, prejudicial material the Court is permitting the jury to hear which is not from witnesses who appeared in this case." (Tr. at 908.)[4]  The hearsay statements to which he was referring were statements from people interviewed by the clinic, and included statements about how Petitioner lied, became rowdy when he drank, was cruel to animals, solicited oral sex from someone, tried to rape his sister's friend, and burned a boy with a hot spoon.  Despite the objection of defense counsel, the clinic records were admitted into evidence in their entirety.  During his closing argument, the prosecutor discussed each of these hearsay statements.  Petitioner maintains that these hearsay statements should have been redacted from the clinic records and because they were not, he was denied a fair trial.[5]

The state courts rejected this claim, concluding that because Dr. Leland had based his opinion on the facts contained in the clinic records, the records were admissible under Ohio Evid. R. 703.  The Magistrate Judge disagreed and found

---

[4] Based on the record, the Court rejects Respondent's argument that because defense counsel voiced no objection, Petitioner has waived all but plain error review.  Although the objection may not have been clearly stated, it was sufficient to put the court on notice.

[5] Respondent argues that Petitioner failed to exhaust his state court remedies with respect to this claim.  However, the Magistrate Judge, in the Supplemental Report and Recommendations, correctly noted that because Petitioner has no presently available state court remedy for this claim, it must be considered exhausted.

21

that admission of the hearsay statements contained in the clinic records violated Petitioner's due process rights.

Respondent objects to the Magistrate Judge's finding that the hearsay statements were not admissible under Ohio Evid. R. 703. This objection is overruled. As noted by the Magistrate Judge, the rule does not make material admissible simply because an expert relied on it. Rather, the rule simply dictates on what kinds of evidence an expert may base an opinion. As one Ohio appellate court has noted, "[w]hile Evid. R. 703 permits an expert to testify as to his opinion based upon the facts or data perceived by him, the rule does not grant blanket admissibility to those underlying facts or data, if they are not otherwise admissible under the Rules of Evidence." *Lorence v. Goeller*, Ninth Dist. No. Civ.A. 04CA008556, 2005 WL 1283713, at *8 (Ohio Ct. App. June 1, 2005) (unreported).

As explained by the Magistrate Judge, the hearsay statements at issue in this cases were not otherwise admissible. In *Ohio v. Roberts*, 448 U.S. 56 (1980), which governs Petitioner's claim, the Supreme Court held that hearsay statements are admissible only if the declarant is unavailable to testify at trial, and only if the statement appears to be trustworthy. Because the prosecutor did not demonstrate that the individuals whose statements were contained in the clinic records were unavailable to testify at trial, Petitioner's rights under the Confrontation Clause were violated when the statements were admitted over the

22

objection of defense counsel. The Magistrate Judge also found that the statements at issue contained multiple layers of hearsay and were simply not reliable. He concluded that it was highly likely that the admission of these statements had a "substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007). The Court agrees with the Magistrate Judge that the hearsay statements should have been redacted from the clinic records. The admission of this evidence deprived Petitioner of his right to a fair trial. Therefore, the Court grants the third amended petition for a writ of habeas corpus with respect to the Third Claim for Relief.

### D. Fourth Claim for Relief: Prosecutorial Misconduct

In his Fourth Claim for Relief, Petitioner argues that the prosecutor's improper pattern of misconduct deprived Petitioner of his due process right to a fundamentally fair trial. As evidence of misconduct, Petitioner cites to the "prior bad acts" evidence discussed in the Third Claim for Relief.[6]

For many of the same reasons previously discussed, the Magistrate Judge recommended that the Court grant the petition for a writ of habeas corpus on this claim also, because the prosecutor's conduct was so flagrant that it rendered the

---

[6] Petitioner also cites to the prosecutor's closing argument in which the prosecutor asked the jury to imagine what was going through Aaron's mind while he was being beaten and the terror he must have felt. The prosecutor asked the jury to speculate how many times he begged his assailants to stop and how many times he must have said a prayer for help. The Magistrate Judge found that this portion of Petitioner's claim was procedurally defaulted.

entire trial fundamentally unfair. He found that the Ohio Supreme Court's conclusion that Petitioner had received a fair trial and that any error was harmless was contrary to federal law.

The Magistrate Judge found that the prosecutor deliberately and improperly elicited testimony concerning Petitioner's alleged sexual encounter with the horse, and improperly argued the truth of the hearsay evidence of other prior bad acts as contained in the clinic records. He also found that although the prosecutor's conduct was relatively isolated, it was so prejudicial in nature and so certain to inflame the passions of the jurors, that it must be considered flagrant. Finally, the Magistrate Judge found that because the other evidence against Petitioner was not very strong, the prosecutorial misconduct did result in substantial prejudice. *See Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003) (setting forth proper analysis for claims of prosecutorial misconduct).

Respondent objects, arguing that the Magistrate Judge failed to give proper deference to the state court's ruling on this issue. Respondent denies that the introduction of this evidence was improper or flagrant. In light of Petitioner's confession, Respondent argues that the jury was unlikely to focus on any of the other "prior bad acts" evidence in reaching a verdict.

For the reasons previously discussed in connection with the Third Claim for Relief, the Court finds that the prosecutor's conduct was, in fact, improper. The Court also finds that it was so flagrant that it deprived Petitioner of a fair trial and

denied him his right to due process.  The offending evidence was deliberately solicited by the prosecutor and served no useful purpose other than to inflame the jury.  The Court agrees with the Magistrate Judge that the state court's decision to the contrary was contrary to, or involved an unreasonable application of, clearly established federal law.  Respondent's objections as to this claim are overruled and the third amended petition is granted with respect to Petitioner's Fourth Claim for Relief.

### E.    Fifth Claim for Relief: Ineffective Assistance of Trial Counsel

In his Fifth Claim for Relief, Petitioner argues that he was denied effective assistance of counsel at his capital trial.  Neither attorney had tried a capital murder case before and although they were given only 90 days to prepare for trial, they did not move for a continuance, believing that such a request would be futile with this particular judge.

Petitioner argues that his trial counsel focused all of their efforts on the motion to suppress his confession, a motion that was denied.  They allegedly failed to investigate witnesses and failed to pursue other avenues to ensure his acquittal.  Petitioner also argues that his trial counsel was intimidated by the prosecutor and by the judge and therefore failed to make appropriate objections to prosecutorial misconduct and to faulty jury instructions.  Citing *Strickland v. Washington*, 466 U.S. 668 (1984), he argues that his attorneys' performance was deficient and resulted in prejudice and undermined confidence in the verdict.

On direct appeal, appellate counsel raised two claims regarding ineffective assistance of trial counsel. However, the sub-claims included in the third amended habeas petition were not included in the assignments of error presented to the state appellate court. When Petitioner attempted to include some of these new claims on direct appeal to the Ohio Supreme Court, the court found that he had waived them by not presenting them at the earliest possible opportunity.

In his Report and Recommendations, the Magistrate Judge found that these claims were procedurally defaulted and that Petitioner had not shown the requisite cause or prejudice. In the alternative, the Magistrate Judge found that the claims failed on the merits.

Petitioner objects to the Magistrate Judge's finding that this claim is procedurally defaulted. Although he admits that he failed to raise these sub-claims in his direct appeal to the court of appeals, he notes that he did include them in his App. R. 26(B) application to reopen his direct appeal and again in his *Atkins* post-conviction petition.

For the reasons set forth by the Magistrate Judge, the Court finds that this was not enough to preserve these claims. Petitioner's objections are overruled. Because the claims are procedurally defaulted and Petitioner has not demonstrated the requisite cause or prejudice, his petition is denied with respect to the Fifth Claim for Relief.

### F.    Sixth Claim for Relief: Ineffective Assistance of Appellate Counsel

In his Sixth Claim for Relief, Petitioner argues that he was deprived of effective assistance of counsel on his direct appeal in violation of his due process rights.  Under *Strickland*, 466 U.S. 668, Petitioner must show both deficient performance and prejudice.

Petitioner argues that his attorneys lacked the requisite experience in capital appeals. Because they failed to filed a timely brief, his direct appeal was dismissed. As the Magistrate Judge noted, however, because Petitioner's appeal was later reinstated, he can show no prejudice.  Petitioner also maintains that his attorneys included "canned" assignments of error that were factually or legally incorrect. However, as the Magistrate Judge noted, this does not rise to the level of a constitutional violation.

Petitioner also argues that his appellate attorneys failed to include certain meritorious claims related to ineffective assistance of trial counsel.  More specifically, they did not argue that his trial counsel was ineffective for: (1) failing to object to prosecutorial misconduct, including the knowing misstatement of the law, improper injection of "other acts" evidence; and arguing facts not in evidence; (2) allowing Petitioner to be sentenced to death on the basis of an invalid aggravating circumstance; (3) failing to move for a continuance so that they had adequate time for "investigating and obtaining mitigation evidence"; and (4) failing

27

to object to certain jury instructions.[7]

The Ohio Supreme Court rejected Petitioner's claim concerning the alleged failure to object to prosecutorial misconduct, noting that failure to make objections may be justified as a tactical decision, and appellate counsel was not obligated to raise every conceivable issue on appeal. Weaker arguments must be winnowed out.

Petitioner maintains that the state court's decision constitutes an unreasonable determination of the facts. According to Petitioner, the record shows that the failure to object was not a tactical decision but simply an oversight. Petitioner also argues that the failure to request a continuance was inexcusable.

In his Report and Recommendations, the Magistrate Judge noted that, with respect to Petitioner's claims that his attorneys failed to object when the prosecutor misstated the law and argued facts not in evidence, Petitioner failed to cite to any support in the record. The Magistrate Judge also noted that because trial counsel did, in fact, object to the introduction of certain "prior bad acts" evidence, there was no factual support for that portion of Petitioner's claim.

The Magistrate Judge also found that some of Petitioner's arguments related to the mitigation phase of his trial are moot because Petitioner was resentenced and is no longer subject to the death penalty. These arguments include Petitioner's

---

[7] This final argument was not presented to the state courts until Petitioner filed his App. R. 26(B) application.

complaint that his attorneys lacked experience in trying capital cases, that his attorneys allowed "Petitioner to be sentenced to death on the basis of an invalid aggravating circumstance," and that his attorneys failed to move for a continuance "for the purpose of investigating and obtaining mitigation evidence."

As to Petitioner's claim that appellate counsel should have raised the issue of trial counsel's failure to object to jury instructions, the Magistrate Judge found that because, as discussed below in connection with Petitioner's Ninth Claim for Relief, there is no merit to Petitioner's claim that the jury instructions given by the court were improper, counsel's failure to object to them cannot form the basis for a claim of ineffective assistance of counsel.

Petitioner objects to the Magistrate Judge's finding that some of his claims of ineffective assistance of appellate counsel are moot because he is no longer subject to the death penalty. He contends that because of the seriousness of the charges against him, he was entitled to effective assistance of counsel and, regardless of the fact that his death sentence was vacated, errors were committed during the trial phase that should have been addressed by appellate counsel.

Petitioner's objection is overruled. With respect to each of his complaints, he has either failed to show that counsel's performance was deficient, or has failed to show that he was prejudiced as a result, as required by *Strickland*. The Court therefore adopts the Magistrate Judge's Report and Recommendations and denies the third amended petition on the Sixth Claim for Relief.

### G.     Seventh Claim for Relief: Removal from Kentucky to Ohio

Petitioner argued that his constitutional rights were violated when Cincinnati police officers picked him up in Kentucky on July 28, 1992 and drove him back to Ohio to question him about Aaron Raines's death.  He maintains that he was never told that he did not have to go with the police officers, and never told that he could be sentenced to death for the crime about which they wanted to question him.

He also contends that his removal from the State of Kentucky violated Article IV, Section 2, Clause 2 of the United States Constitution, which provides "[a] Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

The Ohio courts rejected his claim that his transport across state lines in the absence of proper extradition procedures voided his conviction.  They found that the record showed that Petitioner had voluntarily returned to Ohio with the Cincinnati police officers.  They further found that even if he was coerced, this would not necessarily invalidate his conviction.

In his Report and Recommendations, the Magistrate Judge found ample support for the factual finding that Petitioner went voluntarily with the police officers.  Moreover, an illegal arrest is not necessarily a defense to a valid conviction.  He further found that the officers were not required to tell him that he

30

may be facing the death penalty or that he could refuse to go with them.  Finally,

he questioned the applicability of Article IV, Section 2, Clause 2 to Petitioner's

case, noting that Petitioner had not yet been charged with an offense at the time

of the events in question.

Petitioner objects to the Magistrate Judge's finding that he voluntarily went

with the officers across state lines.  He claims that, at the very least, he was

manipulated by them and tricked into returning to Ohio.  This Court agrees with the

Magistrate Judge that the Ohio Supreme Court's determination that Petitioner had

returned to Ohio voluntarily was not an unreasonable determination of the facts in

light of the evidence presented, and was not contrary to clearly established federal

law.  Petitioner's objections to the Magistrate Judge's Report and

Recommendations are therefore overruled.  The Court denies the requested writ

with respect to the Seventh Claim for Relief.

### H.    Eighth Claim for Relief: Gruesome Photographs

Petitioner argued that the introduction of gruesome and cumulative

photographs of the victim and his own videotaped walk-through of the crime scene

violated his right to due process of law.  The Ohio Supreme Court found that the

photographs and videotape were properly admitted into evidence.

The Magistrate Judge, in the Report and Recommendations, noted that

unless errors by a state court in admitting certain evidence "so perniciously affect

the prosecution of a criminal case as to deny the defendant the fundamental right

31

to a fair trial," they are not cognizable in habeas proceedings. (R&R at 110 (quoting *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). The Magistrate Judge found no basis for concluding that the state court decision with respect to the evidence at issue was contrary to or an unreasonable application of federal law as determined by the United States Supreme Court.

Petitioner did not object to the Magistrate Judge's decision with respect to this particular claim. The Court adopts the Report and Recommendations and denies the third amended petition on the Eighth Claim for Relief.

I.      **Ninth Claim for Relief: Improper Jury Instructions**

Petitioner argued that the trial court's jury instructions with respect to: (a) the credibility of law enforcement officers; (b) the requirement that the verdict be unanimous; (c) the element of "purpose;" and (4) causation, were improper and deprived him of a fair trial.

The Magistrate Judge found that this claim was procedurally defaulted. In the alternative, the Magistrate Judge found that even if the jury instructions were erroneous, they did not rise to the level of a due process violation and were not cognizable in habeas proceedings.

Petitioner first objects to the Magistrate Judge's finding that this claim is procedurally defaulted. He notes that he raised the issue of improper jury instructions in his App. R. 26(B) application to reopen his appeal based on a claim of ineffective assistance of appellate counsel, filed September 15, 2003. Absent

32

good cause shown, such an application is to be filed within 90 days of the journalization of the appellate judgment. Because Petitioner's application was untimely, it was denied by the state appellate court on January 16, 2004.

According to Petitioner, the 90-day deadline is not an adequate and independent state ground on which to premise a default because that deadline was not regularly followed in capital cases at the time. In support, he cites *Landrum v. Anderson*, 185 F.Supp.2d 868, 872-73 (S.D. Ohio 2002), and *Franklin v. Anderson*, 434 F.3d 412, 420-21 (6th Cir. 2006) (citing cases). Petitioner argues that because this procedural rule was not firmly established and regularly followed in capital cases, and since no Ohio courts reached the merits of this claim, federal habeas corpus review on the merits is warranted.

In his Supplemental Report and Recommendations, the Magistrate Judge stated that even if the state courts have not regularly enforced the 90-day deadline in the past, it appears that they have now begun to do so. *See State v. Gumm*, 103 Ohio St.3d 162 (2004); *Twyford v. State*, 106 Ohio St.3d 176 (2005); *State v. Hancock*, 108 Ohio St.3d 194 (2006). Because Petitioner failed to timely file his App. R. 26(B) application, and because that is an adequate and independent ground of decision, the Magistrate Judge again concluded that this claim was procedurally defaulted.

In his objections to the Supplemental Report and Recommendations, Petitioner concedes that whether a procedural rule is firmly established and regularly enforced may change over time. He notes, however, that at the time his application to reopen his case was denied, in January of 2004, Ohio courts were not yet regularly enforcing the rule in capital cases. He therefore argues that Rule 26(B) is not an adequate and independent state rule that precludes consideration of his claim.

The Court sustains Petitioner's objection on this issue. As Petitioner notes, his was one of the very first cases in which the Ohio Supreme Court once again began enforcing the 90-day rule. As the Sixth Circuit held in *Franklin* in 2006, because the Ohio Supreme Court has fluctuated in its treatment of Rule 26(B) applications, "we cannot hold that the state courts have regularly followed and enforced the Rule's timeliness requirement." 434 F.3d at 421. The Court therefore finds that Petitioner's Ninth Claim for Relief is not procedurally defaulted.

The Magistrate Judge found that even if the claim were not procedurally defaulted, it would still fail on the merits because the allegedly improper jury instructions did not so infect the entire trial as to constitute a due process violation. Petitioner objects to the Magistrate Judge's findings only with respect to the "gist of the offense instruction" and the "causation" instruction. The Court overrules both objections.

34

Petitioner first argues that the "gist of the offense" instruction given by the trial court improperly allows jurors to convict one of aggravated murder without a showing of specific intent.  As Respondent notes, the Ohio Supreme Court has held that even though the "gist of the offense" language may be confusing in a murder prosecution which requires "purpose," there is no error so long as the court also provides adequate instructions on the element of specific intent to kill.  *See State v. Wilson*, 74 Ohio St.3d 381, 393, 659 N.E.2d 292 (Ohio 1996).  This is consistent with the instructions given in Petitioner's case.  Petitioner has failed to show how such an instruction is contrary to, or an unreasonable application of, federal law and has failed to how he was prejudiced.  His objection is therefore overruled.

Finally, Petitioner objects to the Magistrate Judge's finding with respect to the causation element.  Petitioner argues that the instruction given -- referring to a "natural and foreseeable result of an act" -- is contrary to the one recommended in Ohio Jury Instructions for a charge of aggravated murder, which requires direct causation.  He contends that the erroneous instruction deprived him of a fair determination of his guilt or innocence.

Petitioner's objection is overruled.  The Magistrate Judge correctly found that Petitioner had failed to identify any federal law governing this claim, and that a court's failure to follow the precise wording of Ohio Jury Instructions is not a federal constitutional claim cognizable in habeas corpus.

To summarize, although Petitioner's Ninth Claim for Relief is not procedurally defaulted, it nevertheless fails on the merits.

## III.    Conclusion

For the reasons stated above, the Court sustains in part and overrules in part the parties' objections to the Report and Recommendations and to the Supplemental Report and Recommendations. The Magistrate Judge's Report and Recommendations and Supplemental Report and Recommendations are adopted in part and rejected in part. The Court grants a conditional writ of habeas corpus with respect to Claims Two, Three, and Four of Petitioner's Third Amended Petition for Writ of Habeas Corpus, the condition being that the state conduct a new trial of Petitioner within 180 days from the date of final judgment in these proceedings.

The Petition is denied with respect to Claims One, Five, Six, Seven, Eight, and Nine. Given that any appeal from this Court's decision on those six Claims for Relief would not be <u>objectively</u> frivolous, Petitioner is granted leave to appeal in forma pauperis. However, as to those six claims, given that Petitioner has failed to make a substantial showing of the denial of a constitutional right and, further, that the Court's decision herein would not be debatable among jurists of reason, Petitioner is denied a certificate of appealability.

March 29, 2011

**WALTER HERBERT RICE**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record